## BLACKLY et al. *v.* MATLOCK et al.

Where third persons intervene in an action by attachment, basing their claim to the property attached upon a contract of consignment which presupposes the existence of a debt, proof of the debt is essential to entitle them to recover.

A party must be held to the material and substantive allegations of his petition; nor will he be permitted to derive any advantage from their contradiction or obscurity.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J. The plaintiffs sued the defendants on a promissory note for $2,240, and attached, at New Orleans, on the 16 February, 1846, as defendants' property, two flat boats, with their cargoes of pork and beef. *White, Warner & Co.* intervened, alleging: That the defendants were indebted to them in or near the sum of $26,000, for acceptances of their drafts, for letters of credit given to them, and for debts of defendants' which they, the intervenors, had become

BLACKLEY
*v.*
MATLOCK.

liable for, or had paid; that the pork and beef had been shipped by plaintiffs to New Orleans, to be there re-shipped to Philadelphia by petitioners, or by their agents, for account of intervenors, in pursuance of previous arrangements with defendants; and that, on the 13th of February, 1846, the intervenors, through one of their firm then in New Orleans, received from defendants a bill of lading for said pork and beef, which, when sold, was to be placed to their account with intervenors upon their acceptances, and for the amount of defendants' debts paid, or assumed by, said intervenors; that said bill was assigned to the order of *Joseph H. White,* one of the intervenors' firm, and by said assignment the latter became the *bonâ fide* owners of the cargoes of the two boats, or sufficiently so to entitle them to a privilege by preference over all other creditors of defendants; that all said acceptances for defendants, and their indebtedness to plaintiffs, took place previous to the attachment of said property, and that the shipment was intended as part payment of the same; that, after deducting the value of said pork and beef, defendants will still be indebted to intervenors nearly $10,000. The intervenors pray for judgment against the defendants, for such an amount as may seem to be due; that the two flat boats, with their cargoes, may be adjudged to belong to them; and that they may have privilege, by preference over plaintiffs and all other creditors, for the amount of their acceptances, and of the indebtedness of defendants to them by reason of the payment of the debts of defendants, and of the possession by the latter of letters of credit upon intervenors for $20,000, and other causes to be shown at the time of the trial; and for general relief, &c." The plaintiffs answered the intervention, by denying generally all the allegations contained in it. They also denied that the intervenors have any privilege or preference over other creditors on the property seized, or that they are owners of said goods or cargoes as alleged. On these pleadings, and on the evidence stated in the opinions *infrâ*, judgment was rendered for the plaintiffs against the defendants for the amount claimed, with a privilege on the property attached, and the intervention was dismissed. The intervenors alone appealed.

*I. A. Jewett,* for the plaintiffs. The first question that presents itself, under the peculiar circumstances of this case, is, whether it can be considered as coming under the general principles of the law of affreightment at all. The intervenors do not occupy the position of holders of a bill of lading. A bill of lading is a contract for the conveyance of cargo, and the master signs it as agent for the owners of the vessel, and by such bill of lading the master engages, as a common carrier, to transport the goods to their destination. 3 Kent's Com. 207, third edition. Now it is clear that, to every contract there must be two parties. To the contract of affreightment, evidenced by a bill of lading, the parties are: 1st, the owner of the merchandize carried; 2d, the carrier. But if both these characters are united in the same person, as in the present case, the mere formality of a bill of lading being made and signed by the captain of the vessel, does not create a contract in a legal sense. For, as already stated, the master of a vessel signs the bill of lading merely as the agent and representative of the owner of the vessel; but if that owner, as in this case, be no other person than the shipper himself, where is that concurrence of two minds—that *aggregatio mentium*—spoken of in the case of *Beal* v. *Kiernan*, in 6 La. 407, 415. The intervenors do not hold a legal bill of lading. The only foundation of the intervenors' claim thus failing, their claim itself must fail. The endorsement upon the bill of lading is evidently nothing but an order upon a servant or agent, which of itself constituted no delivery in law, but only gave the intervenors a right to require the delivery from the said agent or servant. There is no proof of the acceptance of said order. Such acceptance is necessary to complete a delivery, and to put personal property beyond the reach of an attaching creditor. C. C. arts. 2243, 1916, 1917. A mere order is not a delivery. 4 Mart. 20. 5 Mart. 24.

BLACKLY
*v.*
MATLOCK.

We have seen that the intervenors rests their claim for a privilege, upon an instrument which they call a bill of lading. The law on the subject is to be found in Bullard & Curry, 165. Let it be remembered that privileges cannot be extended beyond the letter of the law; that they are *stricti juris*. C. C. art. 3152. 17 La. 443. 1 Rob. 42. No creditor is entitled to a privilege unless he possess the particular documents, or is invested with the certain character and capacity, required by law. Now, the instrument upon which intervenors claim a privilege is not a bill of lading in contemplation of law; and the intervenors, in possession of it, can no more enjoy through it the extraordinary right called a privilege, than if they were in possession of a mere naked order by *Wm. L. Matlock & Co.*, on their agent, Captain *McReady*, to deliver the cargo in question to *White, Warner & Co.* This view of the case, if adjudged to be sound, settles the question, and authorizes a confirmation of the judgment appealed from.

But, even supposing this difficulty out of the way of the intervenors, there is still another objection to their claim. It is clear that they were bound to establish the exact balance of account between themselves and defendants, in order to ascertain the extent of their superior right as *holders* of a bill of lading over the attaching creditors. Intervenors are considered as plaintiffs, and they must make out a complete case. C. P. art. 392. They are held to the same certainty and completeness of proof with the original plaintiff. This has not been done by *White, Warner & Co.*

Why has not this been done? If they are creditors of *Wm. L. Matlock & Co.*, why have they not proved to what amount they are creditors? Their inaction in this respect leaves the way open to the presumption that, a complete presentation of their transactions with *Matlock & Co.* would be unfavorable to their pretensions in this suit. The plaintiffs in intervention have not made out their case. They have not established a definite claim against the defendants. They cannot invoke the action of a court of justice in their behalf. They have not proved the amount for which they would have judgment. *No original plaintiff could ever get a judgment on such pleadings and testimony; nor can an intervenor succeed where an original plaintiff would fail.*

But, supposing all of these material objections removed, there are still other reasons why the intervenors' claim should be rejected, and the judgment of the court *à qua* sustained. In their petition in intervention, *White, Warner & Co.* claim, by virtue of the assignment of the so called bill of lading, to be *owners* of the property attached, or *sufficiently so* to entitle them to a privilege by preference over all other creditors. How a creditor can become sufficiently owner of a thing, to have a privilege upon it, since ownership, according to C. C. art. 3244, is one of the means of extinguishing privileges, remains for the intervenors to show. I shall endeavor to prove that the intervenors were never owners of the property attached, and that they never had a privilege upon it.

Placing out of view, for a moment, the cargo attached, and considering only the right of the intervenors to the flat-boats. I find that the endorsement upon the bill of lading purports to transfer only the freight or cargo in the boats; nothing is said about the boats themselves. Now, the boats as well as the cargo, were attached, as the property of *Wm. L. Matlock & Co.* The endorsement therefore, does not convey to *White, Warner & Co.* any right to, or over, the boats. Moreover the privilege contended for, does not extend to the vessel in which goods are transported. It is expressly confined to the goods. C. C. art. 3214. Bullard and Curry, 165. *Zacharie* v. *Beirne*, 6 La. 402. There can then be no doubt at all of the appellees' right to a judgment for the value of the said flat boats.

I now come to the subject of the attachment of the cargo in question, and maintain, in the first place, that *White, Warner & Co.* never were the owners of it. It was seized in the hands of " Captain *McCready*, who brought it to the place where it was seized," says the petition of intervention. It was seized in the hands of defendants' agent, and was thus legally in the possession of defendants themselves· 6 Rob. 189. *Wilson v. Smith*, 12 La .376. The cargo was " to be sold on commission" by *White, Warner & Co.* The testimony clearly shows the intention with which the bill of lading was assigned. It was not to transfer any ownership; it was merely intended to give to *White, Warner & Co.*, a right to take possession of the property, to enable them to sell it, and, having deducted their commissions, to account for the balance of the proceeds, to *Matlock & Co.*

This conclusion is warranted, not only by the testimony introduced, but also by the petition of intervention itself, in which the intervenors expressly allege that said cargo, when sold, was to be placed to the account of *Wm. L. Matlock & Co.* with *White, Warner & Co.* upon their acceptances. The bill of lading had been assigned for that purpose, and no other; such purpose may be proved, and it will govern in any interpretation of the instrument. *Walter v. Ross,* 2 Washington, C. C. Rep. 290. 8 Pick. Rep. 107, 362. 16 Ibid. 476. It is then beyond all dispute, that the claim of *White, Warner & Co.* to be adjudged owners of the cargo attached, has no basis to rest upon. It is not authorized by the proof; moreover, the ownership is claimed by them only in the alternative. In truth and fact, *Wm. L. Matlock & Co.* were owners of the property.

I proceed now, in the second place, to consider the claim set up by the intervenors, to a privilege on the cargo attached. This claim is utterly inconsistent with their claim of ownership. It is also utterly inconsistent with defendants' denial of ownership. For, if defendants be not owners of the property attached, who are its owners, unless it be *White, Warner & Co.?* but the testimony shows the contrary; and if owners, what becomes of their claim for a privilege? It is submitted that there is some confusion, inconsistency and duplicity in the intervenors' and defendants' pleadings. If not impossible, it is certainly difficult to reconcile the discordant parts with each other, and some very important allegations, while they are incompatible with each other, are absolutely unsustained by any legal proof whatever. This claim has nevertheless been preferred, and its validity must be examined. Let, it be remembered, the intervenors do not allege that they are "consignees," "factors," or "commission agents;" they do not make use of the term, "advances." None of these expressions are to be found in the petition of intervention. The intervenors do not allege that they had "received" the cargo, nor that they had received an "invoice" of it, or a letter of advice, previous to the attachment, or at any time. They do not thus seek to bring themselves precisely within the terms of the law, as found in Bullard and Curry, 165. They claim merely as *assignees* of a bill of lading. Now it is respectfully maintained that, although creditors of the consignor, (if under the circumstances of this case, and particularly the incompleteness of their proofs, they should be deemed such,) yet they are not entitled to a privilege on the goods identified by the bill of lading, if those goods were not *originally consigned to the claimants themselves* of said privilege. This proposition has been established by one of the highest tribunals, and I shall presently show that the authority and the reasons for it are directly in point. According to this authority, an assignment of a bill of lading vests in an assignee merely the right to take possession of the goods therein mentioned, to sell them, and to account for their proceeds to the owner of the same, after the assignees' commissions have been deducted. Such an assignment does *not* confer a *privilege* upon the assignee. He is made, only so far a consignee of the goods, as to authorize him to act about them as agent for their owner; as the law expressly says, he is a "mandatary" of the consignor; he has no privilege.

It is well known, that a creditor claiming a privilege, must, before he can be adjudged entitled to it, bring himself precisely within the terms of the law allowing privileges; they can be claimed for those debts only, to which they are expressly granted by the Code, art. 3152. They cannot be extended by analogy, implication, or construction. They are *stricti juris.* 17 La. 443. 1 Rob. 22. To entitle a consignee, commission agent, or factor, to the privilege contended for by the intervenors, three conditions are by law indispensibly necessary; if either condition be absent the privilege does not exist. *First,* a balance must be due the consignee, commission agent, or factor, for general advances; and *secondly,* the goods, or an invoice, or a bill of lading of them must have been received by the consignee, commission agent, or factor, previously to the attachment; and *thirdly,* the goods must be *consigned to him—a lui expédiées—*who claims the privilege. Bullard and Curry, 165. C. C. art., 3214.

Now, the intervenors have not had the precaution to place themselves within the last enumerated condition. They claim a certain privilege, accorded by law in certain enumerated conditions, without having complied with the requirements of the law on the subject of privilege. The goods were consigned *not* to the intervenors, but to *Wm. L. Matlock & Co.*

The point in question, has never been made before any of the courts of this

47

BLACKLY
*v.*
MATLOCK.

State, so far as the Reports inform us. In all the cases which I have examined, in which a privilege like that contended for has been claimed, the claimant has been the original consignee of the merchandize. But the question has been raised and settled in France, by the Court of Cassation, in an interpretation of art. 93, of the french Code of Commerce, which article is substantially, and indeed, almost word for word, like art. 3214, of our Civil Code. It is to be remarked that, art. 3214 has been amended by the act of February 17th, 1841, found in Bullard and Curry, 165. But the amending act does not change the essential condition found in art. 3214, corresponding to the condition in art. 93 of the Code of Commerce, to wit: that the merchandize on which the privilege is claimed, must be originally *consigned to the very person* who claims it; *that* condition is found in art. 3214, in art. 93 of the Code of Commerce, and in the law of February 17th, 1841.

I here transcribe art. 93, of the Code of Commerce:

· "Tout commissionaire qui a fait des avances sur des marchandises *à lui expédiées* d'un autre place pour être vendues pour le compte d'un commettant a privilége pour le remboursement de ses avances, intérêts, et frais, sur la valeur des marchandises, si elles sont à sa disposition, dans ses magasins, dans un dépôt public, ou si, avant qu' elles soient arrivées, il peut constater par un connaissement, ou par une lettre de voiture, l'expedition qui lui en a été faite." Now, a question arose in France, in 1824, on the point which I make before this court. As article 3214 of the Civil Code is taken expressly from article 93 of the Code of Commerce, any interpretation of this latter by the highest tribunal in France, will, it is respectfully urged, receive great consideration from this court. The case is to be found in the decisions of the Court of Cassation for July 28th, 1826, and it seems to me to be completely decisive of the question. The principle established, is as follows: " If the assignment of a bill of lading, by means of an order, gives to the bearer the right to pursue the sale of the merchandize, it does not confer upon him any privilege upon this same merchandize, when it has *not* been consigned to *him, himself.* Articles 73, 95, and 281.

" The house of *Leseigneur & Co.* of Havre, proposed to the house of *Brindeau & Co.* at Paris, to accept bills drawn by a gentleman of Callieux, and they gave as guarantee, a bill of lading, evidencing a cargo of sixty-seven barrels of sugar not yet arrived. The house of *Brindeau & Co.* accepted the bills. The house of *Leseigneur* failed. The ship arrived at Havre, and *Messrs. Martin, Fouche & Son,* by virtue of the aforesaid bill of lading which had been forwarded to them, took possession of the sixty-seven barrels of sugar. The syndics of the bankrupt *Leseigneur,* enjoined *Martin, Fouche & Son,* from disposing of the sugars. There was an application by *Martin, Fouche & Son,* in the name of the house of *Brindeau & Co.* of Paris, (whose agents *Martin, Fouche & Son* were,) to dissolve the injunction. There was judgment by the Tribunal of Commerce of Havre, rejecting said application, and declaring null and of no effect, the assignment of the bill of lading. From this judgment there was an appeal to the court at Rouen.

The decree of the court at Rouen was in these terms :

" Considering that privileges cannot be extended ; that this, claimed by the house of *Brindeau & Co.* reposes on no text of the law. That they are not commission agents, having privilege in the sense of the article 93, since the merchandize was not *consigned* to *them* at Paris ; that the bill of lading even directs that it is to be delivered to the house of *Leseigneur* at Havre ; that so, the consignment not having been made by the house of *Leseigneur & Co.* to *Brindeau & Co.,* these latter *cannot claim a privilege, in virtue* of the bill of lading, of which they are bearers. That indeed, according to article 281, a bill of lading may be to order and negotiated, but that the negotiation of a bill of lading *cannot,* more than that of an effect of commerce, *give a privilege* to him who is in possession of it. That the bearer of a bill of lading which has been assigned to him *by means of an order,* is nothing but the *mandatary* of the proprietor of the merchandize. That the article 93, indeed accords to him the right to sell it on account of the consignor, but *he has not a privilege,* except in so far as this consignor has made *to the mandatary himself,* the consignment of the objects enumerated in the bill of lading which has been addressed or negotiated to this latter." From this decree, *Brindeau & Co.* appealed.

The Court of Cassation affirmed the principles decided by the court of Rouen, as follows :

" Attendu que, dans le concours des créanciers, on ne peut admettre de privilege que lors qu' il est établi par la loi; que si l'article 281 du Code de Commerce dispose que le connaissement peut être à ordre, ou au porteur, il n'en résulte pas qu'il confére au porteur un privilége sur les marchandises mentionnées en ce connaissement; que sa remise entre ses mains l'autorise seulement à poursuivre la vente de ces marchandises, s'il est nécessaire; que l'article 93 du Code de Commerce, par exception aux règles générales, établit bien un privilége, mais il ne concerne que le commissionaire qui a fait des avances sur la marchandise *à lui expédiée* d'un autre place, pour être vendue au compte du commettant, et encore faut-il qu'elle soit à la disposition de ce commissionaire, dans ses magasins, ou dans un dépôt public, *ou que l' expédition lui en ait été faite*, ce qui ne se rencontre point dans la cause; d'où résulte que l'arrêt attaqué, en refusant le privilége par eux reclamé, loin de contrevenir aux lois, n'a fait que s'y conformer."

I rely with confidence upon this decision, and the general principles and reasoning which sustain it. It is very clear that, if the principle here contended for be not recognised, any consignee of goods, upon which an attachment has been levied, may, by assigning the bill of lading of the goods to a creditor of the owner, and ante-dating the endorsement, though such has not been done in the present case, completely nullify any legal attachment whatever.

*C. A. Jones*, for the appellants. 1. The property attached was assigned to the intervenors by a transfer of the bill of lading, three days previous to the attachment by plaintiffs. The property was seized befored it arrived in New Orleans by the sheriff of the parish of Jefferson, which prevented the master from delivering his cargoes. They were stopped *in transitu*. It is clear that, after the seizing of the bill' of lading, the right of *Matlock & Co.* to stop the property *in transitu*, ceased. Their creditors could not have a greater right than they themselves possessed. See *Stubbs* v. *Lund*, 7 Mass. 453. *Illsly* v. *Stubbs*, 9 Mass. 65. *Walter* v. *Ross*, 2 Washington Cir. C. R. 283. *Summervill* v. *Elder*, 1 Binney, 106. *Cunard* v. *Atlantic Insurance Company*, 1 Peters S. C. R. 386. *Wood* v. *Roach*, 2 Dall. 180. *Hartle* v. *Smith*, 1 Bos. & Pull. 563. Abbott on Ship. pp. 367 to 390. 2 Rob. 342. *Ryberg* v. *Small*, 2 Wash. Cir. C. R. 294, 403.

2. An attachment before delivery, cannot defeat or destroy the rights of a consignee, or his assigns, for value. The delivery was complete, in a legal sense, by the transfer of the bill of lading, and would be so even if the bill could only be considered as a mere order. *Hollingsworth* v. *Napier*, 3 Caines, 162. *Whitehouse* v. *Frost*, 12 East. p. 14. Abbott on Shipping, 375.

3. The property attached was shipped to intervenors to cover large advances and acceptances. They are, by the laws of Louisiana, entitled to a privilege upon it; they have received a bill of lading and letters of advice, all of which are upon record; they are thus brought within the provisions of the act of February 17th, 1841, amending art. 3214 of the Civil Code.

4. The intervenors, in their petition, claim the boats as well as the cargoes, but brought no proof to show that they belonged to ' *Matlock & Co.*, having found that were owned by the captain *(McReady)*, who brought them to New Orleans.

5. It was impossible for the intervenors to show a final account between themselves and defendants. Their bookkeeper, *Voight*, states that, at the time his deposition was taken, no property had been received. The intervenors were forced to take out commissions immediately, and could not wait for the arrival of the different shipments. The court will at once see the difficulty under which they labored. If any importance is attached to this objection, they are prepared, upon a new trial, to show an exact statement of their affairs; their loss by their transaction with the defendants has been more than $10,000, after crediting them with every shipment.'

6. It is alleged that the bill of lading cannot be considered as such, because the consignor and consignee are the same. This is a very common form of a bill of lading. One half the produce shipped to New Orleans, has no further protection than is afforded by such bills. It is a form recognized by all the works that treat upon the subject. On the same principle a bill of exchange, or note payable to the order of the drawer or maker, would not be recognized as a negotiable instrument. By the assignment to *White, Warner & Co.* this bill was clothed with all the formalities necessary to a contract.

7. The exact amount of *Matlock & Co's.* indebtedness to *White, Warner &*

BLACKLY
v.
MATLOCK.

*Co.* is clearly made out, so far as regards the acceptances. But in addition to this, they were entitled to commissions for selling the property when received; these commissions could not be set forth until the sale of the property. Their not being able to settle this part of the case cannot interfere with the indebtedness already shown to exist, and destroy their claim upon the property.

*Grymes,* on the same side.

In this case the judges being equally divided in opinion, the judgment of the court below, under art. 68 of the constitution, was affirmed. The judges delivering their opinions separately.

EUSTIS, C. J. The plaintiffs attached, as the property of the defendants, two flatboats, with their cargoes of beef and pork, for a debt of $2,240. The attachment was levied on the 16th of February, 1846, in the parish of Jefferson. *White, Warner &· Co.,* of Philadelphia, intervened, and claimed the beef and pork attached as the holders of a bill of lading, which came to their hands previous to the attachment, viz. on the 13th February. There was a judgment for the plaintiffs against the intervenors, and they have appealed.

The defendants, who were the shippers and owners of the cargoes, were also the owners of the boats, and the district judge considered that the document under which the intervenors claim, though in point of form a bill of lading and signed by the masters of the boats, was not, under the commercial law, a bill of lading possessing the privileges and effect of such an instrument, inasmuch as there were no competent parties to the contract of affreightment, the captain or master signing it as the agent or representative of the owner. But to this it is to be observed, that, there is a personal contract, between the owner who ships goods on board of his vessel and the captain, by the bill of lading, and that by transferring the bill of lading the owner binds himself, and makes the contract with the person to whom it is assigned. The district judge was also of opinion that, the intervenors had not established their debt with proper certainty, and that, under the allegations of their petition of intervention, their right to hold the property under the bill of lading could not be supported.

Had we this case before us on the question of property, as presented by the *bonâ fide* possession of a bill of lading for produce on transit from the place of shipment to that of its destination, we then should have to determine on the right of the creditor to interfere with and break an ordinary mercantile transaction, while in progress towards its completion. But as we understand the issues which the intervenors have thought proper to set their claims upon, their right to hold and retain the property attached is based upon a debt which they undertook to establish, and of which evidence was adduced, and which was due before the trial of the cause. There were various transactions between the intervenors and the defendants, and other shipments made, besides this, of western produce, which was sold on commission by the intervenors in Philadelphia. We have no clue to the state of the accounts between the parties, and *non constat* that the defendants owe the intervenors, their factors, a dollar. In the issues tendered by the intervenors, the plaintiffs joined, and under them the testimony adduced was taken by commission, and at the trial, though the bills accepted by the intervenors were long since over due, they were not produced, and no evidence of their payment by the intervenors was given.

Under this state of facts, as presented by the intervenors themselves, we are bound to pass judgment. Can we adjudge this case solely on the apparent rights of *White, Warner &· Co.* under their bill of lading, as they existed on the

day of the attachment, or on their rights as they have placed them before us on the trial of the cause, and under their own evidence? We do not understand that a party is permitted to escape from the consequences of his own substantive allegation, made in his pleadings, even if it should defeat his right to recover absolutely. The right of property which the intervenors claim in this shipment is, by themselves, based upon the contract of consignment or of pledge, which presupposes the existence of a debt; and, if that debt has ceased to exist, what becomes of their right? Suppose the property itself were under the control of the court, instead of being, as it is, represented by the bond— we should not be at liberty to give it to the intervenors, under the evidence. They being merchants, and their insolvency not being even intimated, and the drafts being overdue, it is obvious that they have been paid, but not by the intervenors, or they could have produced them. The intervenors are actors ; their case must be determined as they have presented it by their allegations and their evidence.

They ask, in their intervention, for judgment against the defendants for such sum as may be due, and by preference over the attaching creditors. It is true, that there is also an allegation that, by the assignment of the bill of lading, they became the owners of the cargoes consigned to them, and that there is an alternative prayer in their petition, " that it be adjudged that the two flatboats, with their aforesaid cargoes *belong* to your petitioners intervening, or that they have privilege" over the plaintiffs, &c. But it is equally clear that the alleged ownership is based exclusively on their being in advance by their letters of credit and acceptances to the defendants; and that it depended exclusively upon that condition, and, if there was no debt, there was no ownership. This again is a question of practice, and one of those which never ought to be presented to the court. The rules concerning the requisites of petitions and pleadings ought by this time to be understood. The party intervening in this case must be held to the material and substantive allegations of his petition, and can be permitted to derive no advantage from their contradiction or obscurity, to the detriment of other parties, who have followed in all respects the regular and usual mode of proceeding. *Barrett* v. *Zacharie*, 2 Ann. R. 655. *De l'Homme* v. *De Kerlegand*, 4 La. 360. Code of Practice, arts. 149, 172, 393, 394.

ROST, J. I concur with the Chief Justice, for the reasons given by him.

SLIDELL, J. Before stating the material facts in this case, a brief notice of the pleadings is necessary. After the levy of the attachment by the plaintiffs, merchants of Cincinnati, *White, Warner & Co.* filed their petition of interrvention, in which they allege that they are the *bona fide* owners of the property attached, by virtue of a bill of lading transferred to them before the attachment; that they came under acceptances and liabilities for *Matlock & Co.* for about the sum of $26,000, in pursuance of a previous agreement and letters of credit, by which the intervenors were to pay $6000 for the defendants, and also accept bills for them, and be covered by shipments; that the property attached was shipped in fulfilment of such agreement, and, having been received at New Orleans by *White*, one of the intervenors' firm, was to have been forwarded to Philadelphia to them, for sale, the proceeds to be placed to account of the advances; that the intervenors are the owners of it, or at least are entitled to a privilege upon it. The prayer is alternative, that they be adjudged the owners of the property attached, or that they be recognized as privileged creditors. Such I consider the fair substantial purport of the petition of intervention, although

it is inartificially drawn. The answer of the plaintiffs, who made no exception to the intervenors' pleading, accords with this view. They not only deny that the intervenors are creditors of superior rank, "but also expressly deny that they are owners of the property." Under these pleadings I think the intervenors entitled to have their rights considered upon both points: *first*, had they at the date of the attachment such an ownership as placed the property, on its transit through New Orleans to Philadelphia, beyond the reach of an attaching creditor of *Matlock & Co.*; and *secondly*, if not entitled to have the property discharged from the attachment, are the intervenors entitled to a decree of privilege upon the property in the hands of the sheriff. I am of opinion that, under our rules of pleading, such an alternative prayer is admissible; it seems to me not a case of inconsistent pleading, within the intendment of the Code of Practice. The case is different from that of *De L' Homme*, curator v. *De Kerlegand*, 4 La. 360. There the court said: "The suit is brought to recover certain property, and at the same time to enforce the payment of a note due by the defendant to the deceased. It appears very clearly in evidence that this note was given in payment of the property sued for; and it is equally clear that two such demands cannot be cumulated in the same petition; they are inconsistent, and by an express provision of law, one excludes the other. Code of Practice, art. 149." In the case of *Barrett* v. *Zacharie*, the reason for remanding was that, the plaintiffs' pleadings had not presented his real grounds of attack, and the defendant, having been taken by surprise, was not permitted to suffer by an obscurity of pleading for which his adversary was in fault.

Being of opinion, therefore, that the intervenors are not excluded by defective pleading from an examination of the full merits of their cause, I proceed to state briefly the case, as presented by the evidence.

It appears that *Matlock & Co.* and *White, Warner & Co.* had commercial dealings with each other, on previous occasions. The former were western dealers in pork, raising funds by drafts on the intervenors, which were provided for by shipments to them. The attachment was levied on the 16th February, 1846; on the 13th February, *White, Warner & Co's* house, by their partner then present at New Orleans, got the bill of lading for the property attached, and was making arrangements for its shipment to Philadelphia. This transfer of the bill of lading was in pursuance of a previous agreement, as follows: In October, 1845, the defendants, in Indiana, addressed the intervenors at Philadelphia, informing them that they were collecting large supplies of live stock, and wanted funds; that they had a debt of $6000 to pay to parties in Philadelphia, which they desired the intervenors to pay for them; and also desired letters of credit for $15,000 or $20,000, to be covered by promised shipments, as on previous occasions. The intervenors acceded to this proposal, gave the letters of credit, accepted drafts in favor of the Philadeldhia creditors for $6,000, which they subsequently paid, to wit, in the spring of 1846; they also accepted bills of the defendants, drawn upon the letters of credit, to the amount of $21,000. At the time when the testimony was taken under commission by the intervenors these latter acceptances had not matured; but it is proved that they had been given, and that the acceptors had made arrangements to meet them. No provision was made for them by the defendants, save by shipments of produce not sold at the time of taking the testimony; but the value of which, including that in controversy, it is satisfactorily proved would not cover the acceptors.

I consider these facts as establishing in the intervenors such an ownership of

the property attached, acquired by them in good faith and in the usual course of mercantile dealing, in pursuance of a fair antecedent agreement, as placed the property beyond the control of the defendants, and beyond the reach of attachment upon its transit. The intervenors were entitled to have it all pass undisturbed to its destination. If property could be thus arrested on its transit, and an acceptor, whose name is out on the faith of the shipment, be left to meet his acceptances out of his own funds, while the property is locked up *in transitu* by the process of a foreign court, into which the distant consignee is dragged to litigate, commerce would become so dangerous that no prudent man would engage in it. I do not conceive that the absence of proof that the acceptances have been all paid, changes the nature of their case. The intervenors made themselves primarily liable by accepting the bills; by this agreement, and the transfer of the bill of lading, the property fell under their qualified ownership, to enable them to meet the acceptances. They have proved a payment of $6000, and their liability for the residue is not shown to have been removed. Even if *White, Warner & Co.* have not taken up those bills, yet, in the absence of proof that the defendants have themselves taken them up, we must consider the acceptances as outstanding, and the intervenors still primarily liable. Moreover, the agreement entitled them to have the selling of the property in Philadelphia, and thus earn their commissions, which formed part of the consideration for putting out their names.

It is proper to add that, there is no proof of a fraudulent combination to cloak the property, nor do I see any reason to suspect it.

On the first point, therefore, I think the case is with the intervenors, and that there should be judgment in their favor setting aside the attachment. It is not necessary, if the above views be correct, to examine the second point.

KING, J. I concur in the foregoing opinion, prepared by SLIDELL, J., for the reasons by him stated.                    *Judgment affirmed.*